[Cite as *Fikes v. Estate of Fikes*, 2022-Ohio-2075.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JOSHUA FIKES, | : | APPEAL NO. C-210515 |
| | | TRIAL NO. 2020002051 |
| Plaintiff-Appellant, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| ESTATE OF JOSEPH FIKES, III, | : | |
| and | : | |
| GREGORY FIKES, | : | |
| Defendants-Appellees. | : | |

Appeal From: Hamilton County Court of Common Pleas, Probate Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 17, 2022

*Joshua Fikes,* pro se,

*Ritter & Randolph, LLC,* and *Donald Hordes,* for Defendants-Appellees.

**Воск, Judge.**

**{¶1}** Plaintiff-appellant Joshua Fikes challenges the validity of his father's will, which he maintains was the product of undue influence. Joshua appeals the trial court's grant of summary judgment in favor of defendants-appellees Estate of Joseph Fikes, III, and Gregory Fikes (collectively "Estate"). For the following reasons, we affirm the trial court's judgment.

## I.     Facts and Procedure

**{¶2}** In February 2020, Joseph Fikes, III, ("Decedent") lost his three-year battle with pancreatic cancer. In January 2020, with his health in decline, Decedent and his brother Gregory Fikes hired attorney Norma J. Davis to draft his will. Decedent left behind four children—Joshua Fikes, Joseph Fikes, IV, Kimberly Porter, and Michele Porter. Decedent appointed Gregory to serve as the executor. In April 2020, Gregory offered Decedent's will for probate.

**{¶3}** In his will, Decedent left his daughters $3,000 each. He left his friend Jernice a car, household goods, and $2,000. But the bulk of his assets were left to Gregory with instructions to divide those assets equally between Kimberly and Michele. At the time, both Joseph and Joshua were incarcerated and both were omitted from the will. Before his death, Decedent explained to Joseph that he excluded Joseph and Joshua from the will because Davis advised him that the state would seize their inheritance.

**{¶4}** Joseph and Joshua contested the will and alleged that Gregory and Davis had exerted undue influence over Decedent when he executed his will. The Estate moved for summary judgment under Civ.R. 56. In response, Joseph and Joshua filed a cross-motion for summary judgment, arguing that Gregory told Decedent to

leave Joseph and Joshua out of the will because they were incarcerated and "child support will take it."

**{¶5}** The magistrate granted the Estate's motion for summary judgment and found that Joseph and Joshua failed to show that Decedent was susceptible to undue influence, or that any actual influence occurred. Over Joseph and Joshua's objection, the trial court adopted the magistrate's decision.

**{¶6}** Joshua appeals and raises six interrelated assignments of error.

## II. Law and Analysis

**{¶7}** This court reviews a trial court's grant of summary judgment de novo. *Chateau Estate Homes, LLC v. Fifth Third Bank*, 2017-Ohio-6985, 95 N.E.3d 693, ¶ 10 (1st Dist.). In other words, we " 'independently review the record to determine whether summary judgment is appropriate.' " *Al Neyer, LLC v. Westfield Ins. Co.*, 2020-Ohio-5417, 163 N.E.3d 106, ¶ 13 (1st Dist.), quoting *Sarrough v. Budzar*, 2015-Ohio-3674, 38 N.E.3d 921, ¶ 15 (8th Dist.). At the summary-judgment stage, courts construe the evidence most strongly in favor of the nonmoving party. Civ.R. 56(C). Summary judgment is proper if there are no genuine issues of material fact and "the moving party is entitled to judgment as a matter of law." *Id.*

### A. No Evidence of Gregory's Undue Influence

**{¶8}** In his first assignment of error, Joshua maintains that summary judgment was improper because Gregory and Decedent's fiduciary relationship created a presumption of undue influence. The trial court found that the Estate effectively rebutted the presumption because the record lacked evidence that Gregory, the executor, actually exercised undue influence over Decedent.

**{¶9}** In Ohio, a probated will is presumed valid. *Knowlton v. Schultz*, 179 Ohio App.3d 497, 2008-Ohio-5984, 902 N.E.2d 548, ¶ 11 (1st Dist.). A will's validity

may be questioned when a person's undue influence " 'overpower[s] and subjugate[s] the mind of the testator as to destroy his free agency and make him express the will of another rather than his own.' " *Young v. Bellamy*, 2017-Ohio-2994, 91 N.E.3d 172, ¶ 19 (5th Dist.), quoting *West v. Henry*, 173 Ohio St. 498, 501, 184 N.E.2d 200 (1962). But mere influence is not enough. *Knowlton* at ¶ 10. Rather, the influence must be "undue"—it must induce the testator to act contrary to the testator's wishes. *See Henkle v. Henkle*, 75 Ohio App.3d 732, 736, 600 N.E.2d 791 (12th Dist.1991).

{¶10} A party alleging undue influence must show 1.) a "susceptible" decedent, 2.) an opportunity to influence the decedent, 3.) the influence was exerted or attempted, and 4.) the influence resulted in something improper. *Knowlton* at ¶ 8, citing *West* at 510-511. Failure on "any one of the essential elements can be dispositive." *Wallace v. Davies*, 9th Dist. Summit No. 29379, 2020-Ohio-93, ¶ 8. There must be clear and convincing evidence of undue influence. *Young v. Kaufman*, 2017-Ohio-9015, 101 N.E.3d 655, ¶ 55 (8th Dist.).

{¶11} Yet, a party's mere opportunity to exercise undue influence is insufficient to invalidate a will. *Black v. Watson*, 8th Dist. Cuyahoga No. 103600, 2016-Ohio-1470, ¶ 11. Instead, the undue influence "must actually be exerted" over the decedent. *Id.* The ultimate question is "whether undue influence manifested a result different than would have been reached absent the undue influence." *Redman v. Watch Tower Bible & Tract Soc.,* 69 Ohio St.3d 98, 102, 630 N.E.2d 676 (1994).

{¶12} The parties agree that Decedent and Gregory had a fiduciary relationship. A fiduciary relationship between a decedent and beneficiary creates a rebuttable presumption of undue influence. *Kaufman* at ¶ 55. But this presumption can be defeated with evidence that the decedent acted voluntarily and free from undue influence. *Id.* at ¶ 59, citing *Landin v. Lavrisiuk*, 8th Dist. Cuyahoga No. 84893, 2005-

4

Ohio-4991, ¶ 23, and *Ryerson v. White,* 8th Dist. Cuyahoga No. 100547, 2014-Ohio-3233, ¶ 17.

**{¶13}** Joshua maintains that the Estate failed to rebut the presumption of undue influence arising from Gregory's fiduciary relationship with Decedent. We disagree. Joshua relies on transcripts of phone calls between Joseph and Decedent, as well as affidavits from his mother and sister. Yet, nothing in the record suggests that Gregory attempted to, or actually exerted, improper influence over Decedent.

**{¶14}** In its motion for summary judgment, the Estate attached an affidavit from Gregory that stated Decedent made the decision to leave Joseph and Joshua out of his will and that Gregory "did not put the idea in his head or in any other way influence his decision." Joshua maintains that Gregory's self-serving statement is insufficient to rebut the presumption of undue influence, and relies on *Rae v. Geier*, 2d Dist. Darke No. 1939, 1996 Ohio App. LEXIS 4045 (Sept. 20, 1996). But this reliance is misplaced. In *Rae,* Geier used his power of attorney to siphon $150,000 of decedent's money through a joint and survivorship account opened in Geier's and decedent's names. *Id.* at *3. Geier failed to rebut the presumption of undue influence because "there [was] no evidence, except Geier's testimony, tending to show that [decedent] even knew that Geier was funding the account with her property." *Id.* at *8-9. Unlike *Rae,* the evidence in this case extends beyond self-serving testimony.

**{¶15}** Even when we view the evidence most strongly in Joshua's favor, the record shows that Decedent relied on legal advice from Davis when he decided to disinherit Joseph and Joshua. Joshua focuses on a statement made by Decedent in a phone call with Joseph, that "Gregory and [undiscernible] said that I have to give [my retirement account] to Kim and Michelle." But Decedent clarified that "the lawyer told me don't give them – lawyer told me you can't do it." Later, Joseph told Gregory that

5

Decedent "told me that his lawyer told him to take me and Josh out of his will." Gregory confirmed, "[t]hat's what the lawyer said." After Decedent's death, Gregory told Joseph "the lawyer told him not to give you" any money.

{¶16}   Joshua relies on affidavits from his mother and sister concerning their conversations with Decedent. Assuming for the sake of argument that the affidavits are not hearsay, they also indicate that Decedent relied on Davis's legal advice to exclude Joseph and Joshua from his will.

{¶17}   Considering this evidence, the Estate sufficiently rebutted the presumption of undue influence. The trial court properly found no issues of material fact, and that Decedent disinherited Joseph and Joshua because of legal advice from Davis. In other words, the record contains no evidence of Gregory's actual or attempted undue influence over Decedent. If Gregory repeated this legal advice to Decedent, this conduct does not amount to an exercise of undue influence. The evidence indicates that Decedent's actions were voluntary. Therefore, the trial court properly granted summary judgment in favor of the Estate. We overrule Joshua's first assignment of error.

{¶18}   In his second and third assignments of error, Joshua argues Decedent's declining health, fears, and fiduciary relationship with Gregory rendered him susceptible to undue influence. Because Joshua failed to show that Gregory exerted any undue influence, it is unnecessary to address susceptibility. These assignments of error are moot and we decline to address them. *See Jester v. Utilimap Corp.*, 2018-Ohio-4755, 116 N.E.3d 185, ¶ 40 (1st Dist.), citing App.R. 12(A)(1)(c).

B.  Trial Court Properly Construed The Evidence

6

**{¶19}** In his fourth assignment of error, Joshua challenges the trial court's consideration of the evidence at the summary-judgment stage. Joshua argues that he introduced evidence that Gregory influenced Decedent's decision to disinherit Joseph and Joshua. In his view, the trial court failed to construe the evidence in his favor and improperly weighed the evidence in the record. We disagree.

**{¶20}** Summary judgment is inappropriate if conflicting evidence exists and alternative reasonable inferences can be inferred. *Pierson v. Norfork S. Corp.*, 11th Dist. Ashtabula No. 2002-A-0061, 2003-Ohio-6682, ¶ 36. As the nonmoving party, Joshua was entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C). At the summary-judgment stage, "[a] court may not weigh the evidence" and enter judgment in favor of the party with the stronger case. (Citations omitted.) *Pirock v. Crain*, 2020-Ohio-869, 152 N.E.3d 842, ¶ 119 (11th Dist.). In *Pirock*, the defendant's evidence "directly *contradict[ed]* plaintiffs' prior testimony" that the disputed property existed. (Emphasis in original.) *Id.* at ¶ 121.

**{¶21}** In contrast to *Pirock*, there is no conflicting or contradictory evidence in the record. Rather, the evidence consistently demonstrates that Decedent followed the advice from Davis, his attorney. Without any conflicting evidence, there was nothing for the trial court to weigh. As the nonmoving party, Joshua had the burden of establishing specific facts creating a genuine issue of fact for trial. *See Al Neyer,* 2020-Ohio-5417, 163 N.E.3d 106, at ¶ 15, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). Because he was unable to meet his burden, the trial court properly granted summary judgment in favor of the Estate.

**{¶22}** Therefore, we overrule Joshua's fourth assignment of error.

C.  No Attorney Undue Influence

**{¶23}** In his fifth assignment of error, Joshua maintains that Decedent was susceptible to the influence of Davis, his attorney. Likewise, in his sixth assignment of error, Joshua contends that Davis exerted undue influence over Decedent.

**{¶24}** Ohio law recognizes that a testator is particularly vulnerable to an attorney's influence. *Knowlton,* 179 Ohio App.3d 497, 2008-Ohio-5984, 902 N.E.2d 548, at ¶ 12, citing *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 68-69, 567 N.E.2d 1291 (1991). When a testator's attorney is a beneficiary, " 'the attorney might use [her] position as the testator's confidential advisor to frustrate a clearly expressed intention' " in the will. *Knowlton* at ¶ 12, quoting *Krischbaum* at 69.

**{¶25}** Ohio courts presume that undue influence exists "when (1) the relationship of attorney and client exists between a testator and an attorney; (2) the attorney is named as a beneficiary in the will; (3) the attorney/beneficiary is not related by blood or marriage to the testator[;] and (4) the attorney/beneficiary actively participates in the preparation of the will." *Knowlton* at ¶ 11, citing *Krischbaum* at paragraph one of the syllabus. Joshua acknowledges that Decedent did not name Davis as a beneficiary in the will, but argues that this fact is immaterial. But the presumption of Davis's undue influence never arose because she was not a beneficiary of Decedent's will. *Knowlton* at ¶ 15. Therefore, we overrule Joshua's fifth and sixth assignments of error.

### III. <u>Conclusion</u>

**{¶26}** Joshua failed to produce evidence of any actual or attempted undue influence by Gregory over Decedent. Therefore, we overrule Joshua's first assignment of error. Joshua's second and third assignments of error are moot and we decline to address them. We overrule Joshua's fourth assignment of error because the trial court properly analyzed the Estate's motion for summary judgment under Civ.R. 56. Finally,

we find that the advice from Davis, Decedent's attorney, could not have unduly influenced Decedent when she was not a beneficiary of the will. Joshua's fifth and sixth assignments of error are overruled. We affirm the trial court's judgment.

Judgment affirmed.

**ZAYAS, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.